UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

```
RICHARD B. DURGIN                    :
                                     :
          Plaintiff,                 :
                                     :
          v.                         :   File No. 1:07-CV-241
                                     :
BLUE CROSS AND BLUE                  :
SHIELD OF VERMONT                    :
                                     :
          Defendant.                 :
_____:
```

RULING ON PLAINTIFF'S MOTION TO STRIKE AND
PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
(Papers 8, 14, 15)

I.    Introduction

        Plaintiff Richard B. Durgin sued Blue Cross & Blue Shield of
Vermont ("BCBS"), his health insurance carrier, alleging that
BCBS denied coverage for certain accessories to a motorized
wheelchair in violation of the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  ERISA provides
for a civil action by a participant or beneficiary "to recover
benefits due to him under the terms of his plan, to enforce his
rights under the terms of the plan, or to clarify his rights to
future benefits under the terms of the plan."  29 U.S.C.
§ 1132(a)(1)(B).  Before the Court are the parties' cross motions
for summary judgment (Papers 8, 15) and Plaintiff's motion to
strike certain materials as beyond the administrative record
(Paper 14).  Plaintiff seeks to recover the cost of medical
equipment he alleges is covered under the terms of his health

1

care insurance plan, the Vermont Freedom Plan, contracted for by his employer, Valgess, Inc.,[1] and administered by BCBS, and reasonable attorney's fees and costs.  BCBS argues that coverage was rightfully denied because the medical equipment was not medically necessary, as required by the plan.

For the reasons set forth below, the Court grants Plaintiff's motion to strike, denies Plaintiff's motion for summary judgment, and grants BCBS's motion for summary judgment without an award of attorney's fees to either party.

II.  Factual Background

For purposes of the pending motions, the following facts are undisputed and are drawn from the administrative record, Plaintiff's statement of undisputed facts, and the applicable Certificate of Coverage.  Plaintiff is an incomplete quadriplegic, unable to move his legs and with limited ability to move his arms and hands.  In 2002, Plaintiff purchased a component for his power wheelchair which could lift Plaintiff to a standing position.  This standing component was not covered by his insurance.  Plaintiff alleges the standing component provided health benefits, including reduced "shearing" of his skin caused by shifting of weight, fewer bed sores, urinary tract infections, and decubitus ulcers, decreased back pain and spasticity in his legs, and maintenance of bone density.

---

[1]     Plaintiff is President and sole shareholder of Valgess, a corporation which operates a laundromat.

2

In December 2006, Dr. Michael Kenosh sought prior approval for a new wheelchair for Plaintiff, including the standing component.  BC 22-28.[2]  BCBS requested more information from Dr. Kenosh regarding the medical necessity of certain items, including the standing component, and also noted that the request would be reviewed by an external consultant for the medical necessity determination.  BC 57.  Dr. Kenosh responded that he felt the "stand and drive option" was helpful to Plaintiff medically, vocationally, and psychosocially.  BC 33-34. Plaintiff had described less back pain since beginning use of the standing component but Dr. Kenosh could not "substantiate that with medical literature" and Dr. Kenosh supported the component to help prevent osteoporosis but noted "the literature is hazy on weightbearing to prevent osteoporosis."  Id. at 34.  The consultant returned the opinion of Dr. Milton Klein, a physician board certified in Physical Medicine, that the standing component for the power wheelchair was "not medically indicated" because there was "no proven therapeutic benefit"; Dr. Klein did opine that another requested item was medically indicated.  BC 53-54.

On March 29, 2007, BCBS granted prior approval for a power wheelchair but denied certain items, including the standing component.  The stated reason for the denial was that the items

---

[2]     References to "BC" are to the administrative record as BCBS bates stamped and produced it to Plaintiff.  The administrative record is attached to Plaintiff's Statement of Undisputed Material Facts (Paper 16) as Exhibit 2.

were not medically necessary and the Certificate of Coverage provides that services, supplies and charges BCBS deems not medically necessary are excluded from coverage.  BC 18-19.  BCBS also stated the items "are not covered when the Durable Medical Equipment is intended primarily for convenience or comfort beyond what is necessary to meet the member's legitimate medical needs." BC 19.  Plaintiff appealed the denial in June, again noting the health benefits experienced since he began using a wheelchair with a standing component.  BC 12-13.  BCBS conducted the first-level appeal, considering the information provided by Dr. Kenosh, Plaintiff's June appeal letter, Dr. Klein's review, call records and contract documents, and in July upheld the denial stating the items, including the standing component, were "primarily intended for convenience or comfort beyond what is necessary to meet [Plaintiff's] medical needs."  BC 9.  A medical consultant, board certified in Internal Medicine, participated in the review.  Id.

Plaintiff requested a second-level appeal shortly thereafter, BC 7-8, and subsequently submitted two additional letters from Dr. Kenosh, dated August 16,[3] BC 82-83, and

_____

[3]     With regard to the standing component, Dr. Kenosh stated that:  (1) he believed the "benefits of weightbearing as relates to osteoporosis" had previously been outlined; (2) it "allow[ed Plaintiff] to participate in his advanced activities of daily living," including running his business, which was beneficial both physically and psychologically; and (3) the "patient relies on this technology in running his own business." BC 82-83.

4

September 17, 2007,[4] BC 178-81, respectively, as well as various materials regarding standing components in support of his appeal. BC 80-81, 84-177.  Plaintiff personally appeared at a hearing held September 19, 2007 by the Claim Appeal Committee which included BCBS's Corporate Medical Director, a doctor board certified in Family Practice.  BC 182-83.  The Committee also met on September 20.  Id.  By letter dated September 21, BCBS again upheld the denial of benefits for a standing component for Plaintiff's wheelchair, stating the Committee determined "that although the standing feature may be beneficial to [Plaintiff], it is not considered medically necessary by the Plan."  Id.

Following the third denial of his claim for benefits and exhaustion of administrative remedies, Plaintiff filed a complaint in this Court in November 2007.  BCBS moved for summary judgment as did Plaintiff, who also moved to strike certain materials submitted by BCBS in support of its motion and cited in its statement of facts.

III. Motion to Strike

A.   Standard of Review

The Second Circuit Court of Appeals recently stated that "a district court's decision to admit evidence outside the

---

[4]     Dr. Kenosh opined that the standing component was medically necessary for Plaintiff.  In support of his opinion, he stated the component "has many medical benefits which have been documented in the medical literature that [Plaintiff] provided to [BCBS]."  BC 180.  Dr. Kenosh summarized three articles discussing standing wheelchairs.  Id.

administrative record is discretionary," however, that discretion should be exercised on a showing of good cause.  Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008) (internal citation omitted) (affirming the district court's determination that the arbitrary and capricious standard applied).  Here, BCBS, as the party attempting to have evidence outside the record admitted, must show good cause.

B.   Discussion

Plaintiff objects to BCBS's attempt to admit:  (1) materials relating to a prior denial of coverage for the standing component; (2) affidavits created in support of BCBS's motion for summary judgment;[5] (3) the argument that the standing component is considered investigational and experimental under the terms of the plan; and (4) materials relating to the cost to Plaintiff to purchase the standing component.

BCBS admits that the materials relating to the prior denial are not part of the administrative record and "were not part of the evidentiary record upon which [it] reached its decision on the merits of [Plaintiff's] claim."  Paper 17 at 3.  BCBS argues that the materials are offered to show that the denial of coverage at issue here was not arbitrary because the prior denial was upheld by an independent organization which applied the same

---

[5]      Plaintiff also seeks to strike those paragraphs of BCBS's statement of undisputed facts which are taken from the affidavits.

definition of "medically necessary." Id. at 4.  The Court will
not consider this evidence because the prerequisite in the
definition of medically necessary care is that it "must be
consistent with generally accepted practice parameters."  What is
generally accepted as of 2007 is what is relevant here, so the
argument that the 2003 finding bolsters BCBS's position that its
decision is not arbitrary is not convincing.  In the four years
between the 2003 review of BCBS's 2002 denial of coverage and its
2007 denial what care is considered "generally accepted" may well
have changed.

The affidavits offered in support of BCBS's motion for
summary judgment are generally superfluous.  They largely restate
portions of the administrative record.  Further, the standard of
review in this case is the arbitrary and capricious standard; the
Court is not conducting a de novo review.  Therefore, the
additional explication of the administrative review process,
beyond what is contained in the administrative record, offered in
Dr. Perkins' and Ms. Partridge's affidavits is not necessary.

Plaintiff's third objection in its motion to strike concerns
BCBS's contention that the standing component is not covered
because it is considered investigational and experimental.
Plaintiff argues that reason was not communicated as a ground
upon which the denial was based during the administrative
process.  However, BCBS's second and third denial letters
reserved its rights with regard to other grounds for denial of

7

coverage.  BC 9, 182-83.  Also, Plaintiff submitted the literature in support of the standing component.  Medical or Scientific evidence, which could include literature, is a term that appears in the experimental or investigational services definition of the Certificate of Coverage.  That definition also includes health care items that are "not generally accepted by informed health care Providers."  Certificate at 48.  Therefore, as the Court finds the standing component is not generally accepted (see IV.B. at 9-10 below), the standing component would also fit the definition of experimental or investigational services.  Both the medical necessity and experimental and investigational grounds for the denial hinge on essentially the same "generally accepted" language which means they are duplicative and the second ground is unnecessary.

Finally, Plaintiff objects to BCBS's submission of exhibits relating to the amount paid by BCBS for the covered equipment and the cost of the standing component to Plaintiff, were he to purchase it himself.  These additional materials, generated after the appeals process was complete, are clearly outside the administrative record and have no bearing on whether the denial of coverage for the standing component was arbitrary or capricious.

IV.  Motions for Summary Judgment

A.   Standard of Review

Summary judgment is appropriate only where the parties'

8

submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The Court must resolve ambiguities and draw inferences in favor of the non-moving party.  Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (internal citation omitted).  "Where both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consider-ation.'"  Murray v. Int'l Bus. Machs. Corp., 557 F. Supp. 2d 444, 448 (D. Vt. 2008) (citing Schwabenbauer v. Bd. of Educ. of Orleans, 667 F.2d 305, 314 (2d Cir. 1981)).

The parties agree that the benefits decision is to be reviewed under the arbitrary and capricious standard enunciated in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), because the policy gave the insurer discretionary authority to determine eligibility for benefits or to construe the terms of the plan, Certificate at 5.  See Krauss, 517 F.3d at 622.  The arbitrary and capricious standard of review is highly deferential to the plan administrator's determination and the scope of review is narrow:  a "court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law."  Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003)

9

(internal quotation omitted).  Substantial evidence is evidence that a "reasonable mind might accept as adequate" to support the administrator's conclusion and more than a scintilla but less than a preponderance is required.  Id. (internal quotation omitted).  The court may not substitute its judgment for that of the administrator.  Id.

The Supreme Court recently weighed in on the effect of a conflict of interest on the Firestone standard.  Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008).  The Court examined the effect on judicial review of a discretionary benefit determination where the entity administering the plan also determines eligibility and pays for the benefit.  Id. at 2347. The Court held that such a dual role creates a conflict of interest, id. at 2348, and reemphasized that a reviewing court should consider the conflict as a factor in determining whether the plan administrator abused its discretion in denying benefits, id. at 2350-51.  The significance of the factor depends on the circumstances of the case.  Id. at 2351.  Plaintiff concedes that he bears the burden of demonstrating that the denial of benefits was arbitrary and capricious.  Paper 15 at 3.

    B.  Discussion

The applicable Vermont Freedom Plan Certificate of Coverage lists as a general exclusion, "supplies we determine are not Medically Necessary."  Certificate at 25.  To be considered "Medically Necessary," the health care must be:

10

consistent with generally accepted practice parameters
as recognized by health care Providers in the same or
similar general specialty as typically treat or manage
the diagnosis or condition, and:  [1] help restore or
maintain the member's health; [2] prevent deterioration
of or palliate the member's condition; or [3] prevent
the reasonably likely onset of a health problem or
detect an incipient problem.

Id. at 50.  The Certificate emphasizes that "[e]ven if a Provider
prescribes, . . . recommends or approves a service or supply,
[BCBS] may not consider it Medically Necessary."  Id.

The Court is prohibited from substituting its judgment for
that of the plan administrator and that is what Plaintiff seeks.
Though Plaintiff asserts he has experienced significant benefits
from using the standing component, that is not the standard for
providing coverage under his insurance plan.  Plaintiff has
demonstrated that both he and his physician view the standing
component as a medically necessary supply for Plaintiff, however,
the ultimate determination rests with BCBS, as administrator of
the plan, not Plaintiff, his doctor, or the Court.

Dr. Klein, the unaffiliated board certified doctor who, at
BCBS's behest, reviewed Plaintiff's request for approval for the
standing component, among other items, opined that the component
was "not medically indicated" because it had "no proven
therapeutic benefit."  Further, the board certified doctors who
participated in the appeals process at BCBS also found that the
standing component was not medically necessary.  Dr. Klein did

find two of five requested accessories to be medically necessary to protect skin integrity and those items were covered by BCBS.

The applicable definition of medical necessity, quoted above, includes the prerequisite that the care requested be consistent with "generally accepted practice parameters." Dr. Kenosh, Plaintiff's doctor, was unable to marshal any evidence other than personal observation of the benefits experienced by Plaintiff and summaries of a few articles in support of the standing component. Further, Plaintiff has produced no evidence to show that a standing component is usually included in a power wheelchair for incomplete quadriplegics. This lack of evidence coupled with the opinions of Dr. Klein and the BCBS doctors that the standing component does not have a proven therapeutic benefit and is a convenience item supports the conclusion that the standing component is not consistent with generally accepted practice parameters. Therefore, BCBS's determination that the component is not medically necessary appears to have been neither arbitrary nor capricious.

However, in determining whether BCBS acted arbitrarily or capriciously, the Court must also consider any potential conflict of interest on BCBS's part. Under Metlife, BCBS has a conflict of interest because it makes eligibility determinations and pays the approved claims. However, as BCBS sought the opinion of an independent, unaffiliated doctor to make the determination in the

first instance, the conflict of interest factor is not significant and does not alter the ultimate conclusion.

The burden rests on Plaintiff to prove he is entitled to coverage for the standing component and that BCBS's decision to deny coverage was arbitrary and capricious. The Court finds "a reasonable mind might find" that the independent doctor's opinion is adequate to support BCBS's decision. See Fay v. Oxford Health Plan, 287 F.3d 96, 108 (2d Cir. 2002) (upholding administrator's determination of medical necessity notwithstanding insureds' presentation of two qualified expert opinions to the contrary). As required, the evidence before the Court supporting the conclusion that BCBS's determination was not arbitrary and capricious is more than a scintilla. Accordingly, despite the Court's sympathy for Plaintiff and recognition that he feels the standing component is an important part of his healthcare regime, the Court upholds BCBS's determination and grants its motion for summary judgment as to Count I of the complaint.

V.   Attorney's Fees and Costs

The general rule is that "attorney's fees should not be charged against ERISA plaintiffs." Salovaara v. Eckert, 222 F.3d 19, 28 (2d Cir. 2000) (internal quotations omitted). However, 29 U.S.C. § 1132(g)(1) provides that a district court may, in its discretion, award attorney's fees and costs to either party. The Second Circuit requires district courts to evaluate five factors

it enunciated in <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 815 F.2d 869, 871 (2d Cir. 1987):

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

<u>Locher v. Unum Life Ins. Co. of Am.</u>, 389 F.3d 288, 298 (2d Cir. 2004) (citing <u>Chambless</u>).  The <u>Chambless</u> court also counseled that "ERISA's attorney's fees provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights."  815 F.2d at 872.  For example, where an ERISA plaintiff pursues a colorable but ultimately unsuccessful claim, "the third <u>Chambless</u> factor is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant."  <u>Salovaara</u>, 222 F.3d at 31 (reversing award of attorney's fees).  Awarding fees could deter others "from bringing suits in good faith for fear they would be saddled with their adversary's fees in addition to their own in the event that they failed to prevail;" such a result would undermine ERISA's purpose of protecting plan beneficiaries.  <u>Id.</u>

Plaintiff's claim was colorable, therefore the third <u>Chambless</u> factor weighs strongly against granting fees to BCBS. With regard to the second factor, Plaintiff is a small business owner operating a laundromat and paying BCBS's fees as well as

14

his own attorney's fees may be difficult for him.  In keeping with the purpose underlying ERISA, the Court desires to avoid setting precedent that may deter others from bringing potentially meritorious claims for fear that they may ultimately be responsible for the legal fees of those with sufficient resources to defend the claims, such as insurance companies.  Though Plaintiff was not successful and he did not confer a benefit on a group of participants, evaluation of the Chambless factors on the whole weighs against holding Plaintiff responsible for BCBS's attorney's fees.  Therefore, the Court exercises its discretion to deny BCBS's request for attorney's fees.

VI.  Conclusion

     For the reasons stated above, Plaintiff fails to carry his burden of establishing that BCBS's decision to deny coverage for a standing component was arbitrary and capricious.  Accordingly, Plaintiff's motion for summary judgment (Paper 15) is DENIED, and BCBS's motion for summary judgment (Paper 8) is GRANTED without an award of attorney's fees or costs.  Plaintiff's motion to strike (Paper 14) is GRANTED.

     SO ORDERED.

     Dated at Brattleboro, in the District of Vermont, this 24th day of September, 2008.


                              /s/ J. Garvan Murtha
                              J. Garvan Murtha
                              United States District Judge

15